At this point, we're going to take up the last case of this court on this morning's topic. And that is the case of people of the state of Illinois v. Karen Coyne, I'm not sure if I'm pronouncing her correctly, sorry, Russell. And we have Mr. Richmond Shaw for the appellant and Ms. Sharon Shanahan for the athlete. And Mr. Shaw, when you're prepared to proceed, you can begin. Good morning, Your Honors. My name is Richmond Shaw. I represent San Juan v. Russell on behalf of the State Appellate Defender. After a jury trial, a defendant was convicted of first-degree murder. Defendant filed a prosaic motion alleging that his trial counsel was ineffective. And the trial court appointed P.Q. Johnson as defendant's clinical counsel to evaluate and assist him on those claims. Now the state, first off, argues that Johnson might have been acting as a master. First off, the state's position doesn't make a whole lot of sense. Essentially what the state's arguing is the trial court appointed a defendant's counsel to evaluate his claims so the court could determine whether or not to appoint another counsel on his claims that his trial counsel was ineffective. It doesn't make a whole lot of sense. And also, within the Illinois court system, in terms of criminal cases, I've never heard of a criminal court using a master as a judicially appointed fact-finder. There's no language in the transfer by ticket using that term? No, there is not. The language actually specifically says to evaluate and assist him on those claims in the factual hearing as well. And the state points that out and it's bereaved. And I've been trying to kind of work this through my mind. If he was, in fact, appointed as a master, I guess that would be the same as an arm of the court and he would still be bound to conduct the same inquiry that the court would have initially. Yes. If, in fact, he were a master. And if he was a master, he wouldn't actually be appointed to assist him. He would be just appointed as basically the same role as a court. He wouldn't be representing my client in that case, which I don't think that's what happened here, though. One thing the state really relies on, I think, that argument is, well, he files his pro se motion, and a couple of days later, a few days later, Johnson's appointed to represent him. And the argument is essentially, well, there was no initial critical hearing. But the trial court can make a determination as to whether there was possibly a country defendant's case based on its knowledge of defendant's trial as well as its knowledge of trial counsel's performance. And here, the fact that Johnson was appointed based on what the trial court saw of defendant's trial, especially related to the jacket, suggests that the trial court saw a possible neglected defendant's case. And the court's language in appointing him to evaluate and assist him also suggests, you know, that assist him in the claim that his trial counsel's effective also suggests that's basically the way it was. And finally, you know, the fact that the state doesn't stop with its argument saying, well, he's a master, and then it stops, continues on for another 16 pages suggesting that the state's completely convinced that he was acting as a master. Now, Johnson failed to fulfill his duties in the Krankel Memorial because he merely spoke to the defendant about his claims. I'm sorry, he barely or? He merely spoke. Merely, okay. Yes, yes. He merely spoke to the defendant about his claims. But he didn't interview Hardy or trial counsel. He didn't interview Hardy regarding whether she would have, in fact, testified that the code the defendants were in during the interrogation belonged to Triplett. And he didn't interview defendant's trial counsel regarding whether she had requested the campus instruction. You know, first of all, I just want to. He also didn't review the transcripts at all? He also did not review the transcripts. It clarifies that he didn't read the transcripts. And, you know, first of all, I just want to clarify the point here. The state focuses the majority of its arguments on the merits of the claim as to, you know, determining whether Johnson was an effective in the second prong of Strickland as to whether the reasonable probability was indifferent. And, you know, the defendant never argued that Johnson was ineffective. Rather, the defendant's argument was that Johnson failed to fulfill his duties under Krankel and Moore because he didn't interview Hardy or trial counsel. But we just, I don't think we get to the whole Strickland standard here because of ineffective assistant counsel because we just, we don't know what Hardy would have testified to, which was a result of trial counsel's failure, Johnson's failure to interview Hardy. And under this court's bulletin, People v. Jackson, that's 158LF, third at 394, at page 401, new counsel is required to undertake an independent evaluation of the defendant's claim and present the matter to the court for a detached yet adversarial standpoint or adversarial position, plus to comply with Krankel and Moore. Johnson needed to do three things with this. He needed to get an interview with the transcripts. He needed to interview Hardy. He needed to interview trial counsel. However, Johnson failed to do any of those three things. And notably, without having read the transcripts, it's difficult to believe how Johnson would have any clue as to why the defendant's claim about the jacket mattered or why Hardy's testimony was critical. And I think this case is similar to a post-conviction case where, you know, People v. Johnson, the Illinois Supreme Court's held that post-conviction counsel's failure to contact identified witnesses and obtain affidavits was not reasonable assistance. And so based on that case, we know here, if this was filed as a post-conviction petition, you know, what Johnson did here would not have been sufficient. And based on that case law, I think this court should hold that Johnson was required to attempt to interview Hardy and defend his trial counsel. And the state doesn't dispute this. And the street goes as far as conceding that a post-trial motion alleging the defendant's trial counsel is ineffective was subject to strictly standard ineffective assistance of counsel. This is a post-conviction counsel fails to suffice under the reasonable assistance of counsel standard in post-conviction cases where he fails to properly investigate the defendant's claims. How could Johnson possibly satisfy the ineffective assistance of standard where he fails to properly investigate the defendant's claim by failing to interview Hardy? How necessary is it to, if he read the transcript and if Johnson was appointed as counsel, read the transcript and then also spoke with counsel and then determined that there was not an ineffective assistance of counsel, would he then have also had to interview Hardy? Well, Your Honor, in this case, he actually has to read the transcript or speak to trial counsel, which I think is problematic. I was saying that if he in fact did, he could have then also have determined that it wasn't, there was no merit to interviewing Hardy. I see, so hypothetically speaking. Hypothetically, right. You know, I think that might be a slightly different situation, but even in this case where he claims that there's this possibility that she's going to testify, because the jacket was a big thing here, and there's a possibility that she was going to testify in his favor in terms of the jacket. Again, not getting on the Sarah point, but yeah, I do think he needed the interviewers to see what she would have actually said. Because, you know, one thing's clear is that if you read the pro se petition, you know, it's clear that the defendant's not a lawyer. The reason he was appointed counsel is to help him help his claims. And, you know, and then it's not even clear to me that the defendant has a high school education, you know, reading the petition. And, you know, part of the reason the counsel was appointed was to help him with those claims. And that, you know, I think in this case it required interviewing Hardy. Unless only an exception I could think of is if you interviewed the defendant and the defendant said something that couldn't possibly make a claim, then no, I don't think he would have had to interview Hardy. Didn't he admit that the jacket was his? No, I don't believe he did admit that the jacket was his. You know, I think this is going to that harmless area point again. But, you know, there's one sentence that State refers to it, and it's brief, basically, where he says, you know, the State's amendments substantially established. You know, I think it's basically his interpretation of the State's evidence that he believed the trial showed that he owned more than one jacket. You know, I don't think this is his admission that it was his jacket. And, you know, in reading the petition, it's not very clear as to what he was alleging. I mean, I don't think we can basically say based on that one sentence in this pro-State petition, especially when he's appointing counsel, that, you know, he's admitting that the jacket was his. There's no basis to this. And, you know, furthermore, I think versus Suarez, and this is a law in a Supreme Court case, you know, this came out a couple of days ago, so I didn't have a chance to file a motion saying additional authority. But that's 224, Bill 2nd, 37. And in that case, the Supreme Court held that denying compliance with Rule 651C in a post-commissioned case is not subject to the harmless error rule. Thus, even if a rishu raised in the pro-State petition lacks merit as a matter of law, the case must be remanded for further proceedings where counsel fails to comply with Rule 651C. So basically what that case is saying is where counsel's appointed, and counsel fails to do what he was appointed to do, he fails to investigate, he fails to interview identified witnesses, you know, it doesn't matter that it's harmless. You still have to remand it back so the post-commissioned counsel can go back and do his job. And, you know, similarly, I think this case is very similar to that in that, you know, if there's a lack of compliance with Rule 651C, it's not subject to the harmless error rule. It certainly can't be harmless under the Strickland standard where Franklin counsel failed to investigate defendant's claims. In sum, Johnson had a duty to properly investigate defendant's claims. And in this case, Cranko and Moore required him to interview Hardy and defendant's trial counsel. Johnson failed to fulfill those obligations by failing to do so and do those interviews. So accordingly, this court should remand this case to the trial court for appointment of a new counsel to represent defendant's claims that his trial counsel was ineffective and for adhering on those claims. Thank you, Your Honors. You don't intend to address the accomplished instruction? I think that goes into the points. I think that Johnson was required to interview trial counsel. And, you know, I did address, you know, if this court decides that the harmless error rule does apply, I do think I addressed that issue sufficiently in my briefs. I'm happy with that. Okay. Okay. Thank you. Ms. Shanahan. May it please the court. Counsel. My name is Sharon Shanahan and I represent the people of the state of Illinois. I'm curious about this master appointment. I'm not very familiar with it. Well, I'm not either. And I would be glad to answer all your questions, but I would like to request one thing before I get started. Counsel was discussing a recent Supreme Court case that he said is not in this brief and he hasn't filed a motion to cite additional authority. And I didn't even catch the name or the full citation. So I'd like for him to inform me of that case and for this court to give me the opportunity to file a written response. So noted. And you can have a week. That's right. Okay. And Mr. Sheldon, if you could advise her of that case and the citation. Absolutely. Okay, thank you. Okay. So, as far as whether Mr. Johnson was asking, acting as a master, I guess my statement is I'm not sure either. The trial court entered a written order appointing P.K. Johnson V, and here it says, to evaluate the allegations. But if, in fact, he was this master, doesn't he have the same duty that the trial court would have? Yes. And that is to examine the factual basis of defendant's claim. Yes. And what does he do with respect to that? He never looked at the transcript. Well, he said- And he never talked to the actual defense attorney. What he said was, as far as the transcripts go, when he was talking to the judge, he said, I didn't look at the transcript. It's like he was advising the judge in order that the judge could make his, just as a master does, make the ultimate decision. But the judge would be doing that inquiry then on his own if there wasn't this- And he specifically states that I didn't review the transcript, but you were here for that and would know that. So it's like he was advising the defendant. He did interview the defendant about his claims, and he- Do you have any case law? Not a bit. No, I just, I mean, the language is odd. Quite honestly, I would concede that probably the judge's intent was to make this Mr. Johnson grant counsel. But it is odd language to say I'm appointing you to evaluate the allegations and to say- Okay, so let's presume then that he's appointed counsel. What does he do with respect to that duty? Well, most importantly, in addition to reviewing the allegations, he talked to the defendant. Now, the defendant's allegation is- Let's take these one at a time. The defendant's allegation is that he should have called the girlfriend. And as a defense counsel, Mr. Johnson did talk to the defendant. How could he have asked him anything if he didn't ask him what would your girlfriend say? I think we can go on. I didn't quite understand the defense counsel said harmless error several times. And I'm not quite sure where harmless error comes in to an ineffective assistance of counsel claim. So if the court appointed him as counsel, what information then did he get from T.K. Johnson that aided the court in determining whether or not he had effective counsel? Well, it's the position of the state that if the record clearly establishes that trial counsel was not ineffective, then Mr. Johnson- Okay, let's jump to the accomplice instruction. Okay. Certainly, this would have been appropriate. I would- I mean, in our brief and here, I would concede that it would certainly have been a real good idea if defense counsel had given this instruction. Now, I find it very interesting that neither in his reply brief nor before this court does defense counsel- this court requested it of him- he doesn't even mention, respond to the state's argument about people versus love and people versus Lewis, which are very, very similar to this case, and in that they are cases where defense counsel didn't give the instruction or didn't request the instruction. In people versus love, the jury heard from Accomplice Williams about Williams' previous conviction for theft, burglary, and delivery of a controlled substance. Williams told the jury that he had been to the penitentiary twice and was now in jail again. Williams said he sold drugs and was a member of a gang, and he was the security for a gang. He had a pending drug case. He said he didn't want to go to jail again, but he claimed that his testimony at the defense trial would not help the disposition of his own case. Defense counsel vigorously argued about Williams' lack of credibility, and the general credibility instruction was given. The love court said that, given the record, they could not see how the giving of the Accomplice instruction would have affected the probable outcome of the trial. Similarly, in people versus Lewis, the Accomplice was Lovie Johnson. She admitted she observed the murder of the victim, whose name is Venus. She accompanied the defendant to Venus' apartment. She remained there after being apprised of the defendant's criminal intent. She watched for police. She observed the defendant repeatedly stabbing Venus and did not attempt to prevent the defendant from stabbing Venus. She helped hide Venus' body and take some of Venus' property. She did not go to the police after the defendant's arrest until she was being sought by authorities. Here again, the Lewis court concludes that the failure to submit an Accomplice instruction alone does not require reversal, since the jury was instructed that in determining the credibility of witnesses, they should consider any interest, bias, or prejudice the witnesses might have. What was the jury advised that he benefited from his agreement? The co-defendant? I can't say that off the top of my head. I'm looking at the People v. Campbell case, and it says failure to ask for 317 was ineffective, where the witness admitted their role in the crime and both admitted that they had benefited from their agreement to testify for the state. Okay. Which would be comparable to this case, correct? I mean, there's no question that the co-defendant... Well, the cases do seem to go both ways, and they talk about whether or not to close case. The jury could conclude that the co-defendant committed the crime entirely with respect... I'm leaving aside accountability. Okay. That the co-defendant certainly had motive to lay blame, as far as the actual death, on Mr. Russell, correct? The jury could determine that... I'm sorry, I didn't understand. That the co-defendant... I'm forgetting his name. Co-defendant is Triplett. Triplett had motive to lay the entire blame on Mr. Russell. Okay. I don't see... No, he didn't lay the entire blame on Mr. Russell. No, I'm talking about for the death. No. Well... He basically says, you know, I did participate, but I didn't kill her, is the upshot of what he's trying to... What he tried to testify... Well, he said he hit her in the head with a crowbar, and the autopsy showed a crack in her head. He said he hit her in the ribcage with the crowbar. So I think both the actions of both of them together probably... So you're saying that it was essentially harmless in the sense that it wasn't a closed case and the jury... Again, we're using language here that I don't think belongs in an ineffective assistance of counsel claim. We're dealing with prejudice. Are we not? I mean... We are, although that's what I'm looking at the cases that talk about the fact that it wouldn't matter if it was a closed case or not a closed case. Okay, so that... Yeah. Could I ask one more thing before we close here? You were talking about Campbell, and I don't... Is that a case cited by either party? Well, that's a case that is found in Lala. Okay. All right. No, wait, wait, wait. Sorry. Yeah, it is in Lala. Yeah. That's why I was... And these are cases that talk about under certain circumstances a defense lawyer would be ineffective, and they're... And the specific factual question that you're asking me about that arises out of Campbell, and I guess my answer to you there is I don't recall every jury instruction that was... I mean, whether that particular jury instruction was given. So I would like to make one closing statement, and that is we need to remember what basis we come here under, and that is a claim, a rather unusual claim, of ineffective assistance of Crankle Council. Right. So if remand is required, then it is for appointment of new Crankle Council or a new Crankle jury. Thank you, Ms. Campbell. Mr. Strong? No, going back to the point of the master, you know, to the extent that State hasn't already conceded that Johnson wasn't a master, you know, one thing I will note is during the hearing, the trial court did say, did evaluate and assist. And, you know, if he's a master, you can't assist a defendant because there's no attorney client privilege. It actually is essentially acting as the court would. So I think that's a big problem with that argument. And, you know, I just want to make it crystal clear for the record, you know, that the State, you know, I think the State wants to be over here with, you know, the harmlessness of the error, the reasonable probability of outcomes a little different. And, you know, I don't think we're there. I think we're over here in a completely different place because we're not arguing that Johnson wasn't effective. You know, that's not an argument we're making in the brief. We're arguing that he failed to fulfill his duties under Crankle and Moore because he simply didn't do what he was appointed to. He didn't read, you know, he didn't read the transcripts. He didn't interview Hardy. He didn't interview trial counsel. And those are all things that he needs to do in this case to fulfill his obligations under Crankle and Moore. And, you know, the State also talks about Love and Lewis and, you know, goes into the ineffectiveness of his assistance of trial counsel. And, you know, we can argue trial counsel isn't effective. We just don't know at this stage because, you know, basically that's putting us back over here again, you know, with the harmlessness of the error and whether there was a reasonable probability of outcome a little different. We're just not there yet. We have to account, you know, Johnson needed to interview Hardy. He needed to interview trial counsel. He needed to read those transcripts. He needed to essentially make a record for us to see whether, you know, we can get there. But he didn't do that. And, you know, that's basically the one plan I wanted to make coming back up here. Thank you. Thank you. Thank you both for your briefs and arguments. This court will be in recess until 1.30. All right.